IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY MARTINEZ,

        Plaintiff,

v.     CIV 12-0011 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

# **MEMORANDUM OPINION & ORDER**

Plaintiff moves to reverse and remand the Administration's denial of benefits on the ground that Administrative Law Judge ("ALJ") James A. Burke erred in relying on Medical-Vocational Listings (or "Grids") at Step 5. The Appeals Council denied a request for review, and this appeal followed. *See Doc. 17* at 3, 5; *Record* at 1.[1] Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 7, 8.*

The general inquiry is whether ALJ Burke applied the correct legal standards, and whether his decision is supported by substantial evidence. A deficiency in either area is grounds for remand. *See, e.g., Keyes-Zachary v. Astrue,* 695 F. 3d 1156, 1161 (10th Cir. 2012); *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010); *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir.

---

[1] Documents 13-1 through 13-9 comprise the sealed Administrative Record ("Record"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page. ALJ Burke's decision appears at pages 14 through 24.

2005); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004).  Having carefully reviewed the parties' positions and the material portions of the Record, the Court denies the motion.

Plaintiff raises one argument in his motion, and two new arguments in his reply.  All of these arguments relate to the ALJ's Step 5 reliance on the grids and are addressed below.  Since none have merit, the Court finds it unnecessary to require a surreply.  The Court also need not discuss Plaintiff's impairments in detail, because this case fully resolves by reference to binding authority and to the ALJ's written decision.

ALJ Burke issued a comprehensive decision that discusses the medical evidence, the consultative examination, and Plaintiff's testimony.  He found at Step 2 that Plaintiff had the severe impairments of "degenerative disc disease of the cervical and lumbar spines; and chronic SI pain," *Record* at 16, but nonsevere carpal tunnel syndrome and no medically determinable mental impairment, *id.* at 17.   Plaintiff does not challenge this conclusion.  At Step 3, ALJ Burke concluded that Plaintiff does not meet any Listing, a conclusion that Plaintiff also does not challenge.  After a thorough review the medical evidence and testimony, ALJ Burke concluded at Step 4 that:   "[a]fter careful consideration of the entire record [Plaintiff] has the residual functional capacity to perform ***the full range*** of light work."  *Id.* at 18 (emphasis added).  During the course of that analysis, he made three findings that are relevant to Plaintiff's arguments in favor of remand.  Specifically, in context of the overall opinion, ALJ Burke found:

> (1) Plaintiff's medical impairments could reasonably be expected to cause pain, but that Plaintiff's assertions about the "intensity, persistence and limiting effects . . . are not credible," *id.* at 18;
>
> (2) the opinions of consulting examining physician Dr. John R. Vigil were entitled to "great weight," *id.* at 22, and those opinions included that Plaintiff had no functional disabilities "with regards to walking and standing [and] sitting" and no "postural limitations," id. at 19; and

>(3) the opinions of treating physician Dr. William F. Wagner, that included Plaintiff needed to alternate sitting and standing, were "given weight," *id.* at 21, but did not "indicate[] [Plaintiff] is disabled," *id.* at 23, and "the medical evidence does not show any significant functional limitations, which would prevent [Plaintiff] from engaging in work-related activities consistent with [the full range of light work] residual functional capacity assessment," *id.*

As with Steps 2 and 3, Plaintiff does not challenge these individual findings or the ultimate Step 4 conclusion.

In his motion, Plaintiff argues that the presence of the nonexertional impairment of pain precludes reliance on the Grids unless the ALJ specifically finds that the pain was "insignificant." *See Doc. 17* at 4-5. He contends that the "because the ALJ did not find [the] pain was insignificant [he] should have consulted a vocational expert, instead of relying on the grids." *Id.* at 6. The Commissioner argues that the mere presence of a nonexertional impairment does not necessarily preclude application of the Grids. *See Doc. 18* at 4 (citing *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988)). He cites the "evidence of record" that would support a finding "Plaintiff does not suffer from functional impairments from his pain that would preclude him from performing work at the light work activity level." *Id.; see also id.* at 4-7. This evidence largely mirrors the evidence cited by the ALJ in his detailed Step 4 analysis.

The parties are correct, and the law is well-settled, that pain does not automatically preclude reliance on the Grids in every circumstance:

>Ms. Mitchell raises one issue on appeal: whether the Commissioner can conclusively rely on the grids, without vocational expert testimony, where the ALJ specifically found that Ms. Mitchell's ability to perform light work was limited by severe mental impairments. Generally, the grids may not be used conclusively if the claimant has nonexertional impairments that limit the ability to do the full range of work within a classification. *See Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). "Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental

> impairments." *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir. 1991).
>
> However, it is equally clear in our circuit that "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson,* 987 F.2d at 1488. The nonexertional impairment "must interfere with the ability to work." *Id.* Use of the grids is foreclosed only where the "nonexertional impairments are significant enough to limit [the claimant's] ability to perform the full range of jobs" available. *Channel v. Heckler,* 747 F.2d 577, 583 (10th Cir. 1984). In fact, the grids may be used for claimants with nonexertional impairments "whenever the claimant can perform a substantial majority of the work in the designated [residual functional capacity] category." *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995). While an ALJ may determine that a nonexertional impairment has only a negligible effect on the range of jobs available, he "must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler,* 814 F.2d 1456, 1465 (10th Cir. 1987). And "once a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment . . .

*Mitchell v. Astrue,* No. 12–6012, 2012 WL 4478369, at *1 (10th Cir. Oct. 1, 2012); *see also, e.g., Ramirez v. Astrue,* 255 F. App'x 327, 330-31 (10th Cir. 2007) ("a nonexertional impairment can have a negligible effect on the range of jobs available [and] an ALJ may . . . rely conclusively on the grids if he finds . . . that the claimant has no significant nonexertional impairment, . . . and . . . that the claimant can perform most of the jobs at a particular exertional level, but each of these findings must be supported by substantial evidence") (internal quotations, citations, and alterations omitted).

Contrary to Plaintiff's contention, however, ALJ Burke did make the requisite finding. True, he did not use the words "insignificant" or "negligible," but in the overall context of his lengthy analysis, it is plain that he considered Plaintiff's pain at Step 4 and, for various reasons,

found that it did not limit him from performing a full range of light work.[2]  In other words, here the ALJ made "a specific finding, supported by substantial evidence, that despite his non-exertional impairments, [Plaintiff] could perform a full range of sedentary work on a sustained basis."  *Channel,* 747 F.2d at 582.  Because he applied the proper analysis at Step 4, an analysis that Plaintiff does not challenge in any material respect, "it was []proper for the ALJ conclusively to apply the grids in determining that [Plaintiff] was not disabled."  *Id.*[3]

Plaintiff also seems to suggest that, because the ALJ concluded pain was a severe impairment at Step 2, he could not finding the pain insignificant at Step 4.  *See id.* at 5.  For this proposition he quotes a sentence that appears in two Tenth Circuit opinions – "The ALJ's step-two finding makes it impossible to conclude at step four that Mr. Sandoval's pain was insignificant."  *Id.* (citing *Barker v. Barnhart,* 84 F. App'x 10, 13 (10th Cir. 2003)); *see also Sandoval v. Barnhart,* 197 F. App'x 801, 803 (10th Cir. 2006) (identical quote).  In both decisions, however, the Tenth Circuit panel made that comment in situations where the ALJ failed to consider the claimant's pain in connection with the Step 4 analysis and/or the type of

---

[2]  The Court will not "needlessly prolong administrative proceedings" when an ALJ's reasons are clear from the context of the opinion as a whole.  *Wall v. Astrue,* 561 F. 3d 1048, 1069 (10th Cir. 2009).

[3]  *See also, e.g., Armijo v. Astrue,* 385 F. App'x 789, 796 (10th Cir. 2010) ("Mr. Armijo claims it was error for the ALJ to use the grids in determining he was not disabled because there was evidence of significant nonexertional impairments, namely, his depression and the nonexertional impairments noted in Dr. Yamamoto's 2007 disability report. . . .  But we have already confirmed that substantial evidence supports the ALJ's findings that (1) Mr. Armijo's depression had little effect on his ability to perform basic work activities and (2) Dr. Yamamoto's opinion was entitled to little weight.  Thus, substantial evidence supports the ALJ's finding that Mr. Armijo's nonexertional limitations 'have little or no effect on the occupational base of unskilled, light work.' . . .  His reliance on the grids, therefore, was proper."); *Spaulding v. Astrue,* 379 F. App'x 776, 779 (10th Cir. 2010) ("The ALJ concluded that, although Spaulding had pain-causing impairments that limited him to some degree, the limitations were not as severe as he contended and did not preclude him from performing sedentary work.  On our review, the ALJ's pain analysis is supported by substantial evidence.  Spaulding's allegations of non-exertional limitations relating to pain therefore do not preclude application of the grids.").

work the ALJ concluded the claimant could perform.[4]  Decisions that cite the "impossibility" sentence also involve situations where a severe impairment is ignored at Step 4.[5]  That is not the situation here.  Thus, these cases are inapposite, even if Plaintiff had challenged the substance of ALJ Burke's Step 4 decision.

In his reply, Plaintiff contends that because Dr. Wagner cited an alternate sit and stand limitation, and because the ALJ cited that opinion and gave it "weight," ALJ Burke erred in not incorporating this limitation into this RFC finding.  And, because an alternate sit/stand limitation is a nonexertional limitation, vocational expert testimony at Step 5 was required.  *See Doc. 19* at

---

[4] *See Sandoval,* 197 F. App'x at 803 ("On remand, he must assess the level of pain Mr. Sandoval suffers, and determine whether there are jobs he can do with that level of pain. . . . We note, also, as Mr. Sandoval points out, that the ALJ failed to explain what specific evidence supports his finding that Mr. Sandoval can perform the full range of light work.  On remand, the ALJ should identify the evidence on which he relies, indicating his reasons for concluding that it outweighs the opinion of Mr. Sandoval's treating physician, Dr. Vujan, that Mr. Sandoval is limited to sedentary work."); *Baker,* 84 F. App'x at 13-14 ("In this case, the ALJ . . . disregarded claimant's allegations of pain in making his RFC assessment, even though he found her chronic back pain to be a severe impairment at step two. . . . On remand, he must assess the level of pain she suffers, and determine whether there are jobs she can do with that level of pain. . . . we add that the ALJ erroneously decided that claimant retains the RFC for the full range of sedentary work, without supporting his findings with substantial evidence").

[5] *See, e.g., Briley v. Astrue,* No. Civ-11-215-FHS-SPS, 2012 WL 4433522, at *3 (E.D. Okla. Sept. 7, 2012) ("Despite finding that the claimant suffered from severe pain-inducing impairments, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing impairments upon the claimant's RFC.") (emphasis original), *report and recommendation adopted,* No. Civ-11-215-FHS-SPS, 2012 WL 4372237 (E.D. Okla. Sept. 24, 2012); *Bailey v. Astrue,* No. CIV-10-227-SPS, 2011 WL 4553124, at *3 (E.D. Okla. Sept. 29, 2011) ("The apparent inconsistency between this latter conclusion by the ALJ and his step two determination that the claimant's depression was severe is well worth noting here. . . . But in any event, the ALJ clearly provided no analysis of the impact of the claimant's depression on her ability to perform the activities necessary to do the work that he found she could do"); *Cordova v. Astrue,* No. 10-CV-00264-PAB, 2011 WL 2533591, at *3 (D. Colo. Jun. 27, 2011) ("For example, having found her fibromyalgia constituted a severe impairment at step two, the ALJ was not free to ignore it when assessing her RFC."); *Denison v. Astrue,* No. CIV-08-360-JHP-SPS, 2010 WL 2680926, at *3 (E.D. Okla. Mar. 16, 2010) ("The ALJ found that the claimant suffered from severe impairments of mild stenosis at C3–4 of his spine, a history of left elbow and wrist surgery, a history of injury to the left shoulder and hip, degenerative arthritis to the left knee, traumatic arthritis to the right ankle and history of injury to the lumbar spine . . . The claimant testified that he has difficulty sitting, standing, or walking for more than 15 minutes at a time because of pain . . . Despite finding that the claimant suffered from severe pain-inducing impairments, the ALJ failed to consider (or even mention) the effect that the claimant's pain might have on his RFC."), *report and recommendation adopted,* No. CIV-08-360-JHP-SPS, 2012 WL 2653359 (E.D. Okla. Jul. 2, 2010).

2-3. Nevertheless, Plaintiff does not argue that the underlying or ultimate RFC finding is unsupported by substantial evidence. As noted above, the ALJ evaluated all of the doctors' opinions, assigned the weight to them, gave Dr. Vigil's "great weight," and explained why the medical evidence did not warrant imposing any restrictions. For the reasons explained by ALJ Burke in his decision and reiterated by Defendant, the Step 4 of a "full range of light work" unquestionably is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . more than a scintilla, but less than a preponderance." *Raymond v. Astrue,* 621 F.3d 1269, 1271-72 (10th Cir. 2009).

Plaintiff also argues in reply that the ALJ used age fifty for purposes of the Grids. *See id.* at 3-4. Even if this was erroneous, it has no bearing on the outcome. The Grids call for a finding of "not disabled" for fifty year olds, like Plaintiff, who have a high school education, are able to communicate in English, and can perform a full range of light work. *See Record* at 23; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.13 – 202.15.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 16)* is DENIED, the decision of the Commissioner is affirmed, and this action is DISMISSED with prejudice.

**IT IS FURTHER ORDERED** that a final order enter concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent